# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **JUAN R.,** [1] | ) | **NO. CV 17-7054 (KS)** |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| | ) | |
| **NANCY A. BERRYHILL, Acting** | ) | **MEMORANDUM OPINION AND ORDER** |
| **Commissioner Of Social Security,** | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## INTRODUCTION

Plaintiff filed a Complaint on September 12, 2017, seeking review of the denial of his application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI").  (Dkt. No. 1.)  On May 11, 2018, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge.  (Dkt. Nos. 9, 14, 15.)  On May 7, 2018, the parties filed a Joint Stipulation ("Joint Stip.").  (Dkt. No. 13.)  Plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits or, in the alternative, remanding "for a new hearing and decision[.]"

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

(Joint Stip. at 31.)  The Commissioner maintains that the ALJ's decision "is supported by substantial evidence and free from legal error" and thus, should be affirmed.  (*Id*.)  The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed applications for DIB and SSI on June 27, 2013 and June 30, 2013, respectively, alleging disability commencing October 11, 2010.  (Administrative Record ("AR") at 44.)  His applications were denied initially on January 29, 2014 (AR 202-205) and upon reconsideration on July 25, 2014 (AR 208-219).  On September 5, 2014, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 220-21.)  A hearing was held before ALJ Donald Cole on February 16, 2016.  (AR 93-122.)  At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel and assisted by an interpreter.  (AR 95.)  Vocational Expert ("VE") Harlan Stock also testified at the hearing. (*Id.*)  At the hearing, Plaintiff amended his disability onset date to April 18, 2013.  (AR 98.) On June 24, 2016, the ALJ issued his decision finding Plaintiff not disabled.  (AR 38-63.) This timely action followed.

## SUMMARY OF ADMINISTRATIVE DECISION

Applying the five step evaluative process, ALJ first determined that Plaintiff had not engaged in substantial gainful activity since October 11, 2010.  (AR 46.)  At step two, the ALJ found Plaintiff had severe impairments of:  brain lesion of unknown etiology; migraine headaches;  right shoulder impairment;  right wrist impairment;  a knee impairment (meniscus); a depressive disorder; and anxiety-related disorders, including post-traumatic stress disorder.  (*Id*.)  The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals any impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.  (AR 50.)  After considering the entire

record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform medium work with the following limitations:

lift and carry up to 50 pounds occasionally, and up to 25 pounds frequently. [Plaintiff] is able to sit up to 6 hours in an 8 hour workday with normal breaks. Moreover, he is able to stand or walk up to 6 hours in an 8 hour workday . . . he is able to climb ropes, ladders, and scaffolds frequently, he is able to crawl frequently; he is able to use his dominant upper extremity occasionally for overhead reaching; he must avoid even moderate exposure to noise and vibrations; he is limited [sic] understanding, remembering and carrying out simple routine repetitive tasks with standard industry work breaks every two hours; he is limited to no interaction with the general public, and to occasionally work-related, non-personal, non-social interaction with co-workers and supervisors involving o more [than] a brief exchange of information or hand-off of product.

(AR 52.)

At step four, the ALJ concluded that Plaintiff was unable to perform his past relevant work as a security guard. (AR 56.) Plaintiff, who was 41 years old on the alleged disability onset date[2], was not able to communicate in English and is considered "in the same way as an individual who is illiterate in English." (*Id.*) However, based on the VE' s testimony, the ALJ found at step five, that there were other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including linen room attendant (DOT[3] 222.387-

---

[2]    Under Social Security agency guidelines, Plaintiff was considered a "younger individual age 18-49." 20 CFR 404.1563 and 416.963.  (AR 56.)
[3]    "DOT" refers to the *Dictionary of Occupational Titles* (U.S. Department of Labor, 1991).

030, medium, unskilled, SVP[4] 2); silver wrapper (DOT 217.687-018, light, unskilled, SVP 1); and tube operator (DOT 239.687-014, sedentary, unskilled, SVP 2). (AR 57.) Accordingly, the ALJ concluded that Plaintiff has not been under a disability as defined in Social Security Act from October 11, 2010 through the date of the ALJ's decision. (*Id.*)

## DISPUTED ISSUES

Plaintiff alleges the following three errors: (1) the ALJ failed to properly weigh the medical opinion evidence in determining Plaintiff's mental RFC; (2) the ALJ failed to properly evaluate Plaintiff's subjective testimony; and (3) the ALJ presented a flawed hypothetical to the VE. (Joint Stip. at 3.)[5]

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

---

[4]    "SVP" refers to Specific Vocational Preparation, as defined in Appendix C of the DOT.

[5]    On November 13, 2018, Plaintiff's counsel submitted a letter to the Court in which he argued that  in addition to the errors alleged in the Joint Stipulation, the Supreme Court's decision in *Lucia v. SEC*, 138 S. Ct. 2044 (2018) also requires remand of this action. (Dkt. No. 16.)  On November 15, 2018, the Court discrepancied Plaintiff's filing as an improper letter to the Court in violation of Local Rule 83-2.5. (Dkt. No. 18.)

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

**DISCUSSION**

**I.    The ALJ Properly Weighed the Medical Evidence**

In Issue No. 1, Plaintiff argues that the ALJ erred in assessing the opinions of Plaintiff's treating mental health professionals – namely, his psychologist, Perri Johnson, Ph. D., and his board-certified psychiatrist Aelred Boyle, M.D. (Joint Stip. at 4.)

\\

\\

\\

## A. The Treating Opinions

### 1. Dr. Johnson, Treating Psychologist

Dr. Johnson began treating Plaintiff once a month in 2012. (AR 558.) He provided his first assessment of Plaintiff in June 2013, after seeing Plaintiff twice. (AR 482.) An Adult Initial Assessment document from the Los Angeles County Department of Mental Health dated November 26, 2012, states that Plaintiff reported depressed mood daily, difficulty sleeping, nightmares 2-3 times per week, difficulty concentrating, anxiety and feeling paranoid. (AR 505.) Plaintiff's medications included Respirdal, which is an antipsychotic, Tramadol, Vicodin, and Fluoxetin. (AR 506.) Plaintiff reported that he had worked as a security guard for the past 10 years but became very fearful after a co-worker threatened him with a firearm. (AR 507.) He also reported that he opened a Workers Compensation case about this incident in 2010 but lost his case in 2012. (*Id.*) He did not know where his two youngest children lived and had last seen them 7 years before. (*Id.*) The Mental Status Evaluation indicated that Plaintiff was well groomed with dysphoric, sad mood and affect. (AR 508.) Plaintiff reported visual hallucinations but revealed no apparent thought process disturbances, intact concentration, abstractions, judgment, Series 7's, and adequate insight. (*Id.*) He was diagnosed with Post Traumatic Stress Disorder ("PTSD") and given a GAF score of 50.[6]

---

[6] "GAF" refers to Global Assessment of Functioning. *See Diagnostic and Statistical Manual of Mental Disorders*, 4th ed. ("DSM IV"). GAF scores from 41 through 50 are consistent with "serious" symptoms or serious impairment in social, occupational, or school functioning, including suicidal ideation, inability to keep a job, and lack of friends, while scores above 50 are generally consistent with an ability to perform, sustained, full time competitive employment. (DSM IV.) GAF scores have been described as a "rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n. 2 (9th Cir. 1998) (internal citation omitted). However, pursuant to Agency regulations, the GAF scale has no "direct correlation to the severity of requirements in Social Security Administration mental disorder listings." *See* 65 Fed. Reg. 50746, 50764-6. "The DSM V no longer recommends using GAF scores to measure mental health disorders because of their 'conceptual lack of clarity . . . and questionable psychometrics in routine practice.'" *Olsen v. Comm'r Soc. Sec. Admin.*, 2016 WL 4770038, at *4 (D. Or. Sept. 12, 2016) (quoting DSM-V, 16 (5th ed. 2013)).

Dr. Johnson submitted a second assessment reflecting more recent findings in a Summary Mental Assessment dated June 15, 2015. (AR 558.) In the 2015 assessment, Dr. Johnson described Plaintiff as having PTSD, major depression, dysphoria, with constricted affect, and having paranoia and agoraphobic tendencies. (AR 559.) Dr. Johnson checked the box that Plaintiff was not a malingerer and opined that Plaintiff would be absent from work more than three times per month as a result of his impairments. (AR 558-559.) Dr. Johnson opined that Plaintiff had moderate limitations in the ability to understand and remember one-to-two step instructions; moderate-to-marked limitations in the ability to remember locations and work-like procedures, carry out simple, one-to-two step instructions, make simple work-related decisions, interact appropriately with the public, get along with co-workers or peers without distracting them and travel to unfamiliar places or use public transportation; and marked limitations in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule and consistently be punctual, complete a workday without interruptions from psychological symptoms, perform at a consistent pace without rest periods of unreasonable length or frequently, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to workplace changes, set realistic goas and make plans independently. (AR 559.) Dr. Johnson's Progress Notes from August 2015 indicate Plaintiff's anxiety (without stimulation) was "improving" and treatment notes from July 2015 indicate that Plaintiff used public transportation independently to arrive for his appointment and he had "no probs [sic] finding his way using transit systems." (AR 563.)

## 2. Dr. Boyle, Treating Psychiatrist

Dr. Boyle, a board certified psychiatrist, also completed two assessments of Plaintiff's mental functioning. (AR 534-536; 576-577.) The first assessment, dated January 29, 2015, indicates that Dr. Boyle first saw Plaintiff in December 2013 and thereafter usually saw

Plaintiff every two months. (AR 534.) Dr. Boyle diagnosed Plaintiff with a panic disorder, major depression, and PTSD. (AR 534.) He noted that Plaintiff had not required hospitalizations or inpatient treatment for his symptoms and opined that Plaintiff's diagnoses and limitations were expected to last at least twelve months. (*Id*.) Dr. Boyle was "unable to determine" if Plaintiff was a malingerer. (*Id.*)

In evaluating Plaintiff's mental activity, Dr. Boyle opined that Plaintiff would have none-to-mild limitations in his ability to: understand and remember one-to-two step instructions; make simple work-related decisions; interact appropriately with the public; ask simple questions or request assistance; maintain socially appropriate behavior; adhere to basic standards of neatness; respond appropriately to workplace changes; be aware of hazards and take appropriate precautions; travel to unfamiliar places or use public transportation; set realistic goals; and make plans independently. (AR 535.) He indicated that Plaintiff had moderate limitations in his ability to: remember locations and work-life procedures; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule and consistently be punctual; sustain ordinary routine without supervision; work in coordination with or near others without being distracted by them; and get along with coworkers or peers without distracting them. Dr. Boyle opined that Plaintiff had moderate-to-marked limitations in two areas, his ability to: (1) complete a workday without interruptions from psychological symptoms; and (2) accept instructions and respond appropriately to criticism from supervisors. (*Id.*) He noted that Plaintiff self-reported having impaired attention, concentration, and memory and feeling fearful and paranoid. (AR 536.) Dr. Boyle was unable to say whether Plaintiff's symptoms and limitations applied as far back as October 1, 2010, but he confirmed that Plaintiff's symptoms and related limitations had been present since he started treating Plaintiff in December 2012. (*Id.*)

Dr. Boyle provided a second assessment of Plaintiff's mental impairments in a Mental Impairment Questionnaire dated March 31, 2016. (AR 576-77.) In the 2016 assessment, Dr. Boyle noted that he saw Plaintiff every 2-3 months and Plaintiff 's conditions included major depression, recurrent, severe; panic disorder; and PTSD, with the most severe or frequent symptoms being depressed mood, decreased energy, anhedonia[7], and panic attacks. (AR 576.) He also noted that Plaintiff reported having migraines and body pain. (*Id.*) Dr. Boyd opined that Plaintiff's diagnoses and limitations were expected to last at least 12 months and that Plaintiff was not a malingerer. (*Id.*)

The 2016 assessment indicates that Plaintiff has moderate-to-marked limitations in three areas – namely, in his ability to: (1) maintain attention and concentration for extended periods; (2) perform activities within a schedule and consistently be punctual; and (3) complete a workday without interruptions from psychological symptoms. (AR 581.) In all other mental areas listed on the form, Dr. Boyle assessed Plaintiff as having either none-to-mild or moderate limitations. (*Id.*)

**B. Applicable Law**

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec.* Admin., 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

---

[7] "Anhedonia" is defined as "a psychological condition characterized by inability to experience pleasure in normally pleasurable acts." Merriam-Webster Dictionary, available online at https://www.merriam-webster.com/dictionary/anhedonia (last accessed on November 20, 2018).

The opinion of a treating source is generally entitled to greater weight than the opinion of doctors who do not treat the claimant because treating sources are "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone. *See Garrison*, 759 F.3d at 1012; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). To reject an uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). If, however, the treating physician's opinion is contradicted by another medical source, the ALJ must consider the factors set out in 20 C.F.R. §§ 404.1520c(c) and 416.920c(c) in determining how much weight to accord it. These factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician, the "[n]ature and extent of the treatment relationship" between the patient and the treating physician, the "[s]upportability" of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole. The ALJ must articulate "specific and legitimate reasons that are supported by substantial evidence" to reject the contradicted opinions of a treating physician. *Ghanim*, 763 F.3d at 1161.

An ALJ may properly reject a treating physician's conclusions that do not "mesh" with the treating physician's objective data or history, *see, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001), and "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("discrepancy" between treating physician's assessment and clinical notes is a clear and convincing reason for not relying on the doctor's opinion).

\\

\\

## C. Analysis

### 1. The ALJ Did Not Err in Discounting Dr. Johnson's Opinions

Here, the ALJ summarized the treating source assessments and opinions of Dr. Johnson and Dr. Boyle and the record evidence as a whole. (AR 46-55.) The ALJ did not "give significant weight to either assessment of Dr. Johnson." (AR 54.) Specifically, the ALJ explained that much of the information on Dr. Johnson's 2013 Impairment Questionnaire about the severity of Plaintiff's symptoms was information self-reported by Plaintiff. (AR 54.) In the 2013 assessment, Dr. Johnson also opined that Plaintiff is "totally disabled at this time," but the ALJ properly emphasized that the "ultimate determination of disability is reserved to the Commissioner and thus the opinion that [Plaintiff] is totally disabled is not accorded substantial weight." (*Id.*) The ALJ further explained that he did not give substantial weight to Dr. Johnson's assessments of Plaintiff's moderate-to-marked limitations because these opinions were "not consistent with or supported by the record as a whole." (AR 54.)

In support of this conclusion, the ALJ pointed to specific mental status findings from several sources that were inconsistent with Dr. Johnson's assessments. (AR. 54 (*citing* Exs. 9F, 6F, and 2F).) At a 2015 appointment with Dr. Boyle, the treatment notes indicated Plaintiff was "well related, appropriately groomed and dressed, he and an overall neutral affect and his impulse control was intact (*see* AR 542, Ex. 9F). Further, a 2012 Adult Initial Assessment indicated that although Plaintiff reported visual hallucinations, he had no apparent disturbances in his thought process, his concentration, abstractions, judgment and Series 7's were intact, and his insight was noted as adequate. (AR 508; Ex. 6F.) The ALJ noted that evidence from a complete psychiatric evaluation performed in January 2014 showed that Plaintiff is able to do errands, shopping, and a little cooking on his own. (AR

498; Ex. 5F.) Plaintiff reported his hobbies included running, "he can go places by himself," and "described his relationship with his family as okay and with his friends as good." (*Id.*)

Finally, the ALJ noted an August 2013 emergency room visit where Plaintiff self-presented for psychiatric evaluation and the mental status notations indicated his hygiene and grooming were adequate, his behavior was "guarded" and anxious, but he was oriented to person, place, time and situation, his perception was "reality based," his insight, judgment and impulse control were all noted as "fair." (AR 417; Ex. 2F.) The ALJ explained that these mental status notations in the record were inconsistent with Dr. Johnson's opinions regarding the severity of Plaintiff limitations. (AR 54.) In addition, the ALJ noted that Dr. Johnson's assessment of Plaintiff limitations was inconsistent with Plaintiff's activities of daily living, including his ability to do errands, shopping, and some cooking, feed, dress and bathe himself, manage his money, and use public transportation by himself. (AR 51.)

The objective evidence and findings cited by the ALJ are all specific and legitimate reasons supported by substantial evidence in the record to support the ALJ's determination that Dr. Johnson's assessments of the severity of Plaintiff's limitations did not warrant significant weight. Accordingly, the ALJ's assessment of Dr. Johnson's opinions is free of legal error and does not provide a basis for remand.

### 2. The ALJ Did Not Err in Discounting Dr. Boyle's Opinions

The ALJ also did not give the opinions of Plaintiff's treating psychiatrist, Dr. Boyle, substantial weight because, as with the opinions of Dr. Johnson, the ALJ found Dr. Boyle's opinions were "not consistent with or supported by the record as a whole." Specifically, the ALJ explained that in the 2015 Summary of Mental Assessment, Dr. Boyle opined that Plaintiff would have moderate-to-marked limitations in completing a workday without interruption from psychologically based symptoms and moderate-to-marked difficulty

getting along with co-workers without distracting them, but the ALJ noted that "many of the answers" provided in the assessment were based on "Patient report." (AR 54.) With respect to the 2016 *Mental Impairment Questionnaire* that Dr. Boyle submitted, the ALJ noted that Dr. Boyle "was unable to assess how often [Plaintiff] would be absent from work as a result of his impairments or treatment." (AR 55.) The ALJ also explained that while the questionnaire indicates Plaintiff's symptoms included constricted affect, depression and panic attacks while trying to go to sleep, Dr. Boyle "did not delineate whether he had witnessed these symptoms and signs during clinical evaluation, of if they were by patient report." (*Id.*)

The ALJ also pointed to the evidence from various mental status evaluations reflected in the record that supported his conclusion that Dr. Boyle's opinions did not warrant significant weight. (AR 55.) This evidence included Dr. Boyle's own treatment notes from 2015 (Ex. 9F), a December 2012 Adult Initial Assessment findings (Ex. 6F), and the 2013 emergency room treatment notes (Ex. 2F), along with Plaintiff's ability to independently manage daily activities such as grooming, some cooking, errands, shopping, using public transportation, and managing his own money. (AR 55.)

The ALJ's detailed discussion provided specific and legitimate reasons for not giving controlling weight to Dr. Boyle's opinions. Accordingly, the Court finds that the ALJ's assessment of Dr. Boyle's opinion is free of legal error and supported by substantial record evidence. Accordingly, this issue does not warrant reversal or remand.

## II. The ALJ Articulated Legally Sufficient Reasons for Discounting Plaintiff's Subjective Testimony

Plaintiff contends that the ALJ failed to properly consider his subjective symptom testimony. (Joint Stip. at 18-21.)

13

## A.     Applicable Law

An ALJ must make two findings before determining that a claimant's pain or symptom

testimony is not credible.[8]  *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1102 (9th Cir.

2014).  "First, the ALJ must determine whether the claimant has presented objective medical

evidence of an underlying impairment which could reasonably be expected to produce the

pain or other symptoms alleged."  *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).  "Second, if

the claimant has produced that evidence, and the ALJ has not determined that the claimant is

malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the

claimant's testimony regarding the severity of the claimant's symptoms" and those reasons

must be supported by substantial evidence in the record.  *Id.*; *see also Marsh v. Colvin*, 792

F.3d 1170, 1173 n.2 (9th Cir. 2015); *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1161 (9th

Cir. 2008) (court must determine "whether the ALJ's adverse credibility finding . . . is

supported by substantial evidence under the clear and convincing standard").

In weighing a plaintiff's credibility, the ALJ may consider a number of factors,

including:  "(1) ordinary techniques of credibility evaluation, such as the claimant's

reputation for lying, prior inconsistent statements concerning the symptoms, and other

testimony . . . that appears less than candid; (2) unexplained or inadequately explained

---

[8]     On March 28, 2016, Social Security Ruling ("SSR") 16–3p superseded SSR 96–7p, which
required the ALJ to assess the credibility of a claimant's statements.  SSR 16–3p focuses on the
existence of medical cause and an evaluation of "the consistency of the individual's statements about
the intensity, persistence, or limiting effects of symptoms with the evidence of record without
consideration of the claimant's overall 'character or truthfulness'."  *See* Guide to SSA Changes in
Regulations and Rulings 2016–17, June 2017.  The revision is applicable to Plaintiff's application
here because the ALJ's decision was issued on June 24, 2016.  (AR 58.)  The Ninth Circuit has
acknowledged, however,  that SSR16–3p is consistent with existing precedent that requires that the
assessments of an individual's testimony be focused on evaluating the "intensity and persistence of
symptoms" after the ALJ has found that the individual has medically determinable impairments that
could reasonably be expected to produce those symptoms.  *Trevizo v. Berryhill*, 871 F.3d 664, 678,
n.5 (9th Cir. 2017).

failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ must also "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). "General findings are insufficient." *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

### B. Analysis

At the hearing, Plaintiff testified, with the assistance of a Spanish language interpreter, about his impairments and ability to function. (AR 98-122.) He testified that after an encounter with a former co-worker who threatened him with a firearm, he cannot work because he suffers stress, nervousness and is not able to concentrate well. (AR 101.) Plaintiff also stated that he does not have any problems being with other people and has friends but does not see them frequently because he prefers being alone. (AR 102.) When asked about his physical problems, Plaintiff indicated he has a torn ligament in his right knee, problems with his right wrist and right shoulder, a disk out of place in his spine that makes him unable to be seated for long periods of time. (AR 103.) He also testified that he needs to lie down twice a day every day. (AR 104.) At the hearing, Plaintiff testified that he was wearing sunglasses indoors because the light in the room caused him headaches. (AR 109.) He stated that he had two to three panic attacks per day, experiences visual hallucinations, and hears voices calling his name. (AR 111-112.)

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but found that Plaintiff's statements about the intensity, persistence and limiting effect of those symptoms "are not entirely consistent with the medical evidence." (AR 53.) The ALJ based this determination on

inconsistencies reflected in the record, including the discrepancy between Plaintiff's statement to Dr. Botros, the consulting psychiatrist, that he got along "good" with his friends, and Plaintiff's testimony at the hearing that he did not really have a social life.  (*Id*.) The ALJ also found that Plaintiff's statements about the severity of his limitations, both physical and mental, were not supported by the record evidence because of an absence of "substantial treatment or physical findings."  (AR 53.)  The ALJ pointed to Plaintiff's daily activities as also inconsistent with his testimony about the severity of limitations. Specifically, the ALJ explained that Plaintiff reported he does errands, goes shopping, does a little cooking, and takes daily walks.  (AR 51.)  Plaintiff manages his own money and testified that he takes public transportation daily by himself.  (AR 99.)  While at the hearing Plaintiff reported experiencing visual and auditory hallucinations, the ALJ noted that the objective record did not "substantially reflect that such hallucinations have been observed/detected  contemporaneously by health care providers.  (AR 52.)

The ALJ's stated rationales were clear and convincing reasons supported by substantial record evidence to find Plaintiff's testimony about the severity of his symptoms and limitations less than fully credible.  The ALJ reasonably concluded that Plaintiff's activities, though limited, were transferable to an employment setting.  *See Burch*, 400 F.3d at 681 (ALJ was entitled to infer that a claimant's daily activities involved skills that could be transferred to a workplace when the claimant was "able to care for her own personal needs, cook, clean and shop" and "interact[] with her nephew and her boyfriend"); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1991) ("[Claimant] indicated that she was able to take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries.").    Similarly, the ALJ reasonably concluded that Plaintiff's activities were inconsistent with the presence of an incapacitating or debilitating condition.  *See, e.g., Molina*, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); *Berry v. Astrue*, 622 F.3d 1228,

16

1234-35 (9th Cir. 2010) (evidence that claimant's self-reported activities suggested a higher degree of functionality than reflected in subjective symptom testimony adequately supported adverse credibility determination); *Orn*, 495 F.3d at 639 (evidence of daily activities may be relied upon where it contradicts the claimant's other testimony). Even if the record evidence might be subject to more than one rational interpretation, where, as here, one such interpretation supports the ALJ's decision, the ALJ's conclusion must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Accordingly, the Court finds no legal error in the ALJ's assessment of Plaintiff's credibility.

### III. The RFC Formulated by the ALJ and Presented as a Hypothetical to the VE Was Not Supported by Substantial Evidence

Plaintiff argues in connection with Issue No. 1 that "it is impossible to determine if the RFC is based on substantial evidence" (Joint Stip. at 12) because the ALJ failed to explain how the medical evidence supported the limitations assessed[9] and, in connection with Issue No. 3, that the ALJ's hypothetical to the VE failed to accurately describe "moderate limitations in Plaintiff's concentration, persistence or pace in a work environment" (Joint Stip. at 29). This Court agrees with Plaintiff's contentions.

\\
\\
\\

---

[9] Plaintiff only challenges the ALJ's assessment of the treating clinician's opinions concerning Plaintiff's mental limitations. (Joint Stip. at 12.) As Defendant points out, Plaintiff raises no challenge to any of the ALJ's determinations regarding Plaintiff's exertional capacity. (*Id.*) Thus, any argument concerning the RFC's physical exertional limits is waived. *See e.g., Laronge v. Berryhill*, 685 Fed. Appx 519, 521 (9th Cir. 2017) (argument that ALJ erred in setting mental RFC waived when not raised in claimant's opening brief).

### 1. The ALJ Erred in Determining Plaintiff's Mental RFC

With respect to Plaintiff's mental RFC, the ALJ determined that Plaintiff "is limited [to] understanding, remembering and carrying out simple routine repetitive tasks with standard industry work breaks every two hours; he is limited to no interaction with the general public, and to occasional work-related, non-personal, non-social interaction with co-workers and supervisors involving no more hand [sic] a brief exchange of information or hand-off of product." (AR 52.)  In reaching this assessment, the ALJ considered the report of the examining psychiatrist, Dr. Maged Botros, who examined Plaintiff on January 11, 2014.  (AR 48; 495-501 (Ex. C-5F).)  Dr. Botros opined that Plaintiff would have no functional limitations, including no functional limitations in his ability to:  relate to and interact with co-workers, colleagues, supervisors and the public; understand and carry out simple instructions; maintain focus and concentration; perform, simple and repetitive or detailed and complex tasks; maintain regular work attendance; perform work activities on consistent basis; and, *inter alia*, perform work activities without interruptions. (AR 500.)  The ALJ gave Dr. Botros's assessment "some, but not great weight."  (AR 49.)

The ALJ found that Dr. Botros's opinions were "not fully consistent with the medical evidence of record."  (AR 48.)  Specifically, the ALJ determined that Plaintiff "would be best served with no public interaction and only superficial interaction with co-workers or supervisors" and the RFC reflects the ALJ's addition of these limitations.  (AR at 48-49.)  The ALJ did not mention or discuss Dr. Botros's opinion that Plaintiff would have no limitations in his ability to maintain focus and concentration required to do work related activities.

The opinions of the treating mental health professionals conflict with Dr. Botros's opinion that Plaintiff has no mental limitations.  In a 2014 Mental Assessment, Dr. Boyle, Plaintiff's treating psychiatrist, opined with respect to concentration and persistence that

Plaintiff would have none-to-mild limitations in carrying out simple, one-to-two step instructions, but *moderate* limitations in all other activities relating to concentration and persistence with the exception of the ability to "complete a workday without interruptions from psychological symptoms" for which Dr. Boyle indicated Plaintiff had moderate-to-marked limitations. (AR 535.) In a 2016 Mental Impairment Questionnaire, Dr. Boyle opined that Plaintiff would have *moderate or moderate-to-marked* limitations in most areas of concentration and persistence and indicated Plaintiff' had none-to-mild limitations in the ability to make simple work-related decisions. (AR 581.) The ALJ did not accord substantial weight to either of Dr. Boyle's assessments. (*See* AR 55.)

Dr. Johnson, Plaintiff's treating psychologist, completed a 2015 Summary Mental Assessment in which he opined with respect to concentration and persistence that Plaintiff would have moderate-to marked limitations in the ability to carry out simple, one-to-two step instructions and making simple work-related decisions. (AR 560). In all other activities related to concentration and persistence, Dr. Johnson opined that Plaintiff would have marked limitations. (*Id.*) As discussed above, the ALJ also did not give significant weight to either of Dr. Johnson's assessments. (AR 54.)

The ALJ did not attempt to reconcile the conflicting opinions of the examining and treating physicians concerning the presence and severity of Plaintiff's limitations in concentration, persistence, and pace. Nevertheless, when discussing whether Plaintiff's impairments or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, the ALJ concluded that "with regard to concentration, persistence or pace, the claimant has moderate difficulties." (AR 51.) The ALJ also concluded that "there is no persistent, persuasive evidence that [Plaintiff] would be unable to perform simple, routine, repetitive tasks at the eroded medium, or light levels." (*Id.*) However, the ALJ does not identify the evidence that supports his conclusion that Plaintiff is able to perform simple, routine, repetitive tasks despite his

moderate difficulties with concentration, persistence, and pace, and he omits any mention of difficulties in concentration, persistence or pace from Plaintiff's mental RFC.

No medical opinions from either the treating, examining, or reviewing physicians indicate that despite having moderate limitations in concentration, persistence and pace, Plaintiff could nevertheless do simple, routine, repetitive tasks. The ALJ, who is not a medical professional, appears to have made an independent determination that Plaintiff is able to perform simple repetitive tasks despite his limitations in concentration, persistence, and pace, thereby improperly substituting his own judgment for that of the medical professionals. *See Miller v. Astrue,* 695 F. Supp.2d 1042, 1048 (C.D. Cal. 2010) (improper for ALJ to act as his own medical expert, substituting his opinion for that of a medical professional); *Winters v. Barnhart*, 2003 WL 22394784, at *6 (N.D. Cal. Oct. 15, 2003) ("ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert.").

Although the Ninth Circuit held in *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), that an ALJ's hypothetical that includes the ability to perform simple, routine repetitive tasks" can, at least in some circumstances, adequately capture a claimant's limitation in concentration persistence or pace, 539 F.3d at 1174 (*citing Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)), *Stubbs-Danielson* is distinguishable from the instant case. In *Stubbs-Danielson*, the Ninth Circuit held that the ALJ's hypothetical including a limitation that the claimant could "perform simple routine, repetitive sedentary work" was supported by the opinion of a medical professional who had found the claimant moderately limited in terms of pace but opined that the claimant nevertheless "retained the ability to 'carry out simple tasks.'" *Id*. at 1172. Here, by contrast, no medical professional found that Plaintiff had moderate limitations in the areas of concentration, persistence, and/or pace but could nevertheless perform simple tasks. Accordingly, the ALJ's determination that Plaintiff can perform simple tasks despite his moderate limitations in concentration, persistence, or pace

is not supported by any medical opinion in the record and, thus, is not supported by substantial evidence.

## 2. The ALJ's Error Rendered the VE's Testimony Unreliable

As Plaintiff points out in Issue No. 3, the ALJ's error renders the VE's testimony unreliable. For the testimony of a VE to be considered reliable, "the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (internal citation omitted). Further, the Ninth Circuit has emphasized that a VE's testimony "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982) (citing *Kornock v. Harris,* 648 F.2d 525, 527 (9th Cir. 1980)). Similarly, although the ALJ is not required to "include all claimed impairments in his hypotheticals, he must make specific findings explaining his rationale for disbelieving any of the claimant's subjective complaints not included in the hypothetical. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997).

As explained above, the ALJ's determination of Plaintiff's mental RFC did not properly account for Plaintiff's mental limitations with respect to concentration, persistence and pace. Further, that error was reflected in the hypothetical that the ALJ posed to the VE[10] and that in turn formed the basis for the VE's opinion that there were jobs that an individual with Plaintiff's mental RFC could perform. (*See* AR 117.) Accordingly, the VE's testimony

---

[10] Specifically, the ALJ asked the VE whether there are jobs in the national economy that an individual of Plaintiff's age, education and work experience can perform if that person is limited to medium work, frequent climbing of ladders, scaffolds and ropes, frequent crawling, occasional use of abdominal and upper extremity for overhead reaching, and less than moderate exposure to noise and vibration and, in addition, also limited to "understanding, remembering and carrying out *simple, routine, repetitive tasks* with the need for standard industry breaks every two hours, no interaction with the public and no more than occasional work related non-personal, non-social interaction with co-workers and supervisors involving no more than a brief exchange of information or hand off of product." (AR at 116-18) (emphasis added).

that there are jobs in the national economy that an individual with Plaintiff's limitations could perform is not reliable.

The Court cannot say that the ALJ's failure to properly account for Plaintiff's moderate limitations in concentration, persistence, or pace was harmless or inconsequential to the ALJ's ultimate nondisability determination, particularly because when the ALJ did present the VE with a hypothetical that encompassed a limitation in the areas of concentration, persistence, or pace,[11] the VE opined that there are no jobs in the national economy that an individual with those limitations could perform. (*See* 118.) Accordingly, a remand for further evaluation of Plaintiff's RFC and, if necessary, presentation of an amended hypothetical to the VE is warranted.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

---

[11] Specifically, the ALJ asked about an individual with all of the limitations identified in footnote 10 who also would be limited to occasional climbing of stairs and ramps, balancing, stooping, kneeling, crouching and crawling, no climbing of ladders, scaffolds and ropes, and who would be off task for an hour during the work day in addition to regularly scheduled breaks. (AR 118.)

22

**CONCLUSION**

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED AND REMANDED for further administrative proceedings.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and counsel for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 29, 2018

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE